**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| CAMPAIGN FOR RESPONSIBLE TRANSPLANTATION, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 00-2849 (RMU) |
| | : | | |
| v. | : | Document No.: | 132 |
| | : | | |
| UNITED STATES FOOD AND DRUG ADMINISTRATION *et al.*, | : | | |
| | : | | |
| Defendants.[1] | : | | |

**MEMORANDUM OPINION**

**DENYING THE PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEY'S FEES AND COSTS**

**I. INTRODUCTION**

The plaintiff, Campaign for Responsible Transplantation ("CRT"), is a non-profit organization dedicated to increasing awareness of the dangers of a cellular treatment therapy called xenotransplantation. CRT brought suit to compel defendant Food and Drug Administration ("FDA"), to disclose documents related to clinical trials involving xenotransplantation. During the course of the litigation, the defendant voluntarily released some documents and the court ruled that the defendant was justified in withholding the documents it did not release. The plaintiff now moves for attorney's fees pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(4)(E)(a). The court denies the plaintiff's motion for attorney's fees because the plaintiff did not substantially prevail on the merits of its claims.

---

[1] The plaintiff also brought suit against several intervenor-defendants. Because the instant motion only applies to defendant Food and Drug Administration ("FDA"), the court refers to the defendants in the singular.

## II.  BACKGROUND

Xenotransplantation ("XTP") involves the implantation of animal tissues, cells and organs into human beings for treatment of human diseases.  Mem. Op. (Jul. 23, 2001) at 1.  The FDA regulates XTP products as "investigational new drugs" ("INDs").  *Id.* at 2.  The plaintiff, concerned about potential public health risks of XTP products, submitted a written FOIA request for records related to thirty-five XTP INDs on March 9, 2000.  Mem. Op. (Sept. 3, 2002) at 3.  The FDA acknowledged receipt of the request and indicated it would respond to the request "as soon as possible."  *Id.*  When the plaintiff did not receive a response to its FOIA request by August 2, 2000, the plaintiff filed an appeal with the FDA.  *Id.*  After the defendant failed to respond to the plaintiff's appeal, it filed suit in this court on November 27, 2000 to compel immediate disclosure of the requested records.  *Id.*  After commencing suit, the plaintiff narrowed its original FOIA request to include only documents generated by the defendant and documents concerning clinical trials related to nineteen of the thirty-five INDs.  Mem. Op. (Sept. 24, 2004) at 3.

The plaintiff, in an effort to further narrow the scope of the litigation, moved for *Vaughn* indices[2] describing documents related to all nineteen INDs.  Mem. Op. (July 23, 2001) at 3-4.  The defendant countered that such a request would take an estimated two years to complete because it involved review of about 240,000 pages of documents.  *Id.* at 6.  In its cross-motion, the defendant asked the court to instead allow it to produce a sample index with respect to one of

---

[2] The *Vaughn* index is an affidavit that describes the withheld or redacted documents and justifies, in detail, why each record is exempt from disclosure under FOIA.  *King v. U.S. Dep't of Justice*, 830 F.2d 210, 223-24 (D.C. Cir. 1987).  The index serves to aid the requester in determining what documents to request, as well as to aid the court in reviewing the validity of the agency's withholding. *Vaughn v. Rosen*, 484 F.2d 820, 823; *Wiener v. FBI*, 943 F.2d 972, 977-78 (9th Cir. 1991).

the nineteen INDs. *Id.* at 6-7.  The defendant supported its motion by noting that the "same types of FDA-generated documents are found in every xenotransplantation IND file, and that they would assert the same exemptions for documents in the indexed IND as it would for the same types of documents in the other INDs." *Id.* at 8.  The court's 2001 opinion denied the plaintiff's motion for *Vaughn* indices for all INDs, and instead granted the FDA's motion to produce a sample *Vaughn* index for one IND ("IND G").  *Id.* at 7.  The FDA produced a sample *Vaughn* index for IND G on September 4, 2001.  Pl.'s Mot. for Summ. J. (Jan. 15, 2002) at 22.  The court later used the sample index as the basis for a ruling covering all of the INDs subject to the plaintiff's FOIA request.  Pl.'s Mot. to Enforce Sept. 24, 2004 Order.  On October 15, 2001, the FDA also released responsive documents that it did not plan to exempt from disclosure.  Pl.'s Mot. for Summ. J. (Jan. 15, 2002) at 23.

After the FDA produced the sample index and released some documents related to the sample IND, both parties moved for summary judgment over the IND G documents that the FDA continued to withhold.  Mem. Op. (Sept. 24, 2004) at 3.  The plaintiff moved for the immediate release of all IND G documents that the FDA claimed were exempt.  Pl.'s Mot. for Summ. J. (Jan. 15, 2002).  The defendant, conversely, moved the court for a ruling that the withheld documents were exempt from disclosure.  Def.'s Mot. for Summ. J. (Mar. 29, 2002).  On September 3, 2002, the court granted in part and denied in part both summary judgment motions, concluding that the FDA conducted an adequate search, but that its sample *Vaughn* index was inadequate to justify the withholdings.  Mem. Op. (Sept. 3, 2002) at 16.  Rather than rule on the propriety of the defendant's decision to withhold documents by relying on an inadequate *Vaughn* index, the court postponed judgment on the merits of the parties' claims and ordered the FDA

produce a revised sample *Vaughn* index. *Id.*

While preparing its revised *Vaughn* index for IND G, the FDA released additional documents that it did not plan to withhold. After the FDA produced its revised sample *Vaughn* index, the parties filed renewed cross-motions for summary judgment. Mem. Op. (Sept. 24, 2004) at 3. On September 24, 2004, the court denied the plaintiff's motion for immediate release of withheld documents and instead granted the defendant's motion, holding that the FDA lawfully withheld contested documents pursuant to FOIA exemptions. *Id.* at 23. Because the *Vaughn* index and the court's ruling related only to the sample IND G, the court also ordered the FDA to release all non-exempt documents related to the other eighteen INDs. *Id.* at 22. Months later, after the defendant had not released the documents with respect to the other eighteen INDs, the plaintiff moved to enforce the court's order. The court denied the plaintiff's request, stating that "[t]he parties' submissions demonstrate that they have not adequately communicated with each other . . . [and] the court is confident that the parties do not wish to further burden the court with the task of unraveling unnecessary disputes." Order (June 3, 2005). The court now turns to the plaintiff's motion for attorney fees and costs.

### III. ANALYSIS

#### A. Legal Standard for Awarding Attorney's Fees in the FOIA Context

Pursuant to 5 U.S.C. § 552(a)(4)(E)(a), the court may assess "reasonable attorney fees and other litigation costs reasonably incurred in any case . . . in which the complainant has

substantially prevailed."[3] To award attorney's fees under FOIA, a court must undertake a two-step inquiry. First, the court must determine whether the claimant is eligible for attorney's fees. *Pyramid Lake Paiute Tribe v. U.S. Dep't of Justice*, 750 F.2d 117, 119 (D.C. Cir. 1984). To be eligible for fees, the claimant must "substantially prevail" in the underlying FOIA litigation. *Id.* Second, the court must determine that the plaintiff is "entitled" to an award of attorney's fees and costs. *Md. Dep't of Human Res. v. Sullivan*, 738 F. Supp. 555, 563 (D.D.C. 1990) (citing *Cuneo v. Rumsfeld*, 553 F.2d 1360, 1365 (D.C. Cir. 1977)). In deciding whether a claimant is entitled to an award of attorney's fees and costs, a court analyzes four factors: "(1) the benefit to the public, if any, derived from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding of the records had a reasonable basis in law." *Cuneo*, 553 F.2d at 1364. The second and third factors "are closely related and are often evaluated together." *Sullivan*, 738 F. Supp. at 563 n.11 (citing *Fenster v. Brown*, 617 F.2d 740, 743 (D.C. Cir. 1979)). "None of these factors are dispositive," *Piper v. U.S. Dep't of Justice*, 339 F. Supp. 2d 13, 20 (D.D.C. 2004), and "[e]ntitlement is at the discretion of the district court." *Sullivan*, 738 F. Supp. at 565.

### B. The Plaintiff is Not Eligible for Attorney's Fees

To be eligible for attorney's fees, a party must "substantially prevail" in his suit. *Oil, Chem. and Atomic Workers Intel Union, AFL-CIO v. U.S. Dep't of Energy*, 288 F.3d 452, 56-57 (D.C. Cir. 2002) ("*OCAW*") (citing *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of*

---

[3] The "substantially prevail" language in the FOIA attorney fees statute is the functional equivalent of the "prevailing party" language in other fee-shifting statutes. *Oil, Chem. and Atomic Workers Intel Union, AFL-CIO v. U.S. Dep't of Energy*, 288 F.3d 452, 56-57 (D.C. Cir. 2002) (citing *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 603 (2001).

*Health and Human Res.*, 532 U.S. 598, 603 (2001). Here, the plaintiff claims it substantially prevailed because: (1) the FDA released thousands of requested documents after the court ordered it to produce a revised *Vaughn* index for IND G; (2) the court's September 3, 2002, order stated that the defendant's *Vaughn* index was inadequate; and (3) the court's September 24, 2004 order required the FDA to release documents. Each of these arguments is discussed in turn below.

### 1. The Plaintiff is Not Eligible for Attorney's Fees Based on the Defendant's Voluntary Release of Requested Documents

The plaintiff argues it obtained judicial relief because the defendant released thousands of requested documents after the court issued its order requiring the FDA to submit a revised *Vaughn* index for IND G. Pl.'s Mot. for Attorney's Fees ("Pl.'s Mot.") at 11. The defendant counters that the plaintiff did not substantially prevail because it released the requested documents voluntarily.[4] Def.'s Opp'n to Mot. for Attorney's Fees ("Def.'s Opp'n.") at 6-7. For a party to "prevail," there must be a "court-ordered change in the legal relationship between the parties." *Buckhannon Bd. & Care Home, Inc.*, 532 U.S. at 604 (internal citation omitted). Stated differently, a party that achieved the desired result because the lawsuit brought about a "voluntary change in the defendant's behavior" is not a prevailing party. *Id.* at 605; *OCAW*, 288 F.3d at 454-457 (internal citation omitted) (adopting the *Buckhannon* definition of "prevailing party" in the FOIA context and holding "for plaintiffs in a FOIA action to become eligible for an award of attorney's fees, they must have been awarded some relief by a court, either in a

---

[4] The FDA claims it always agreed to release responsive documents that were not exempt and that it never released any documents it claimed were exempt. Def.'s Opp'n to Mot. for Attorney's Fees ("Def.'s Opp'n.") at 7.

judgment on the merits or in a court-ordered consent decree"). In this case, the court's 2002 order did not compel the FDA to release responsive documents; rather, the court's 2002 order directed the defendant to submit a revised *Vaughn* index. Mem. Op. (July 23, 2001) at 10. The FDA then released some documents voluntarily. Under the *Buckhannon* rule, the FDA's voluntary release of the requested documents ends the court's inquiry. *Davis v. U.S. Dep't of Justice*, --- F.3d ----, 2006 WL 2411393, at *11 (D.C. Cir. Aug. 22, 2006). Although CRT may have partially achieved a desired result when the FDA voluntarily released some responsive documents, the plaintiff is not considered a prevailing party because the court did not order this relief.[5]

### 2. The Plaintiff is Not Eligible for Attorney's Fees Based on the Court's September 3, 2002 Order

The plaintiff also argues that it is eligible for attorney's fees because the court's 2002 order stated that the FDA's *Vaughn* index was inadequate. This D.C. Circuit recently provided a framework for determining if a party "substantially prevailed" in its FOIA action. *Davy v. CIA*, --- F.3d ----, 2006 WL 1889141, at *4 (D.C. Cir. July 11, 2006). The Court analyzed two factors: (1) whether the "order changed the legal relationship between the plaintiff and the defendant," and (2) whether the plaintiff "was awarded some relief on the merits of his claim." *Id.*

#### a. The 2002 Order Did Not Change the Legal Relationship Between the Parties

The plaintiff argues that the court order requiring the defendant to produce a more detailed *Vaughn* index constitutes a "change in the legal relationship" between the parties. Pl.'s

---

[5] The court does not question the "subjective" motivations of the FDA in voluntarily releasing responsive documents because it would be difficult to draw "reasonable inferences from the nature and timing of the defendant's change in conduct." *Buckhannon*, 532 U.S. at 609.

Mot. at 11. The defendant counters that the court's interim order on a procedural ruling did not alter the legal relationship between the parties because it already had a legal obligation to produce a *Vaughn* index. Def.'s Opp'n at 7.

An interim order that is procedural, rather than substantive, does not alter the legal relationship between the parties. *Davy*, 2006 WL 1889141, at *3 (stating that no change in the legal relationship exists where "the order was procedural – conduct a search – as opposed to substantive – produce documents") (citing *OCAW*, 288 F.3d at 458-59 for the proposition that an order requiring an agency to search its records does not constitute court-ordered relief on the merits). When the FDA produced an inadequate *Vaughn* index, this court declined to rule on the propriety of the exemptions claimed by the defendant.[6] The court instead ordered that the FDA submit a revised *Vaughn* index for review. Like a teacher returning a paper to a student for revision prior to assigning a grade, the court returned the *Vaughn* index to the FDA for revision prior to ruling on the merits of the parties' claims.[7] The court's 2002 order was a procedural, rather than substantive, order because it required the defendant to revise the *Vaughn* index, rather than requiring the defendant to produce documents. As a result, the 2002 order did not "change the legal relationship between the parties." *Buckhannon*, 532 U.S. at 605.

In addition, a court order that preserves the *status quo* does not change the legal

---

[6] Indeed, the court explicitly stated that is was not ruling on the merits of the case: "Rather than rule on the basis of inadequate *Vaughn* indices, the court orders the FDA to submit new representative *Vaughn* indices with proper detailed document descriptions and reasons for withholding that illuminate the contents of the documents and the reasons for nondisclosure." Mem. Op. (Sept. 3, 2002) at 16.

[7] Or, in golfing parlance, the court ordered a "mulligan." A mulligan is "a free shot given a golfer . . . when the previous shot was poorly played." MERRIAM-WEBSTER'S DICTIONARY 764 (10th ed. 1993). *See also MacNeill Eng'g Co., Inc. v. Trisport, Ltd.*, 59 F. Supp. 2d 199, 200 (D. Mass. 1999) (stating that "[l]itigants, like golfers, often miss the mark on their first attempt").

relationship between the parties.  *See Davy*, 2006 WL 1889141, at *4; *see also OCAW* at 458; *Edmonds*, 414 F.3d at 1322 (holding an order expediting process of a FOIA request changed the *status quo* because, prior to the order, the defendant was not under "judicial direction to produce any category of documents by any specified date").  When determining if the legal relationship between the parties has changed, courts compare the status of the parties' relationship prior to the court order with the status of the parties' relationship after the court order.  *See*, *e.g.*, *OCAW* at 458 (holding that "[b]efore August 23, the court had not ordered the Energy Department to turn over any documents; after the August 23, the Energy department still had no obligation to do so"); *Davy*, 2006 WL 1889141, at *4 (holding that "before May 4, 2001, the CIA was not under any judicial direction to produce documents by specific dates; after May 4, 2001 the Agency was under judicial direction to "produce all 'responsive documents' by the specified dates").

   Here, before September 3, 2002, the court had not ordered the FDA to turn over any documents; after September 3, 2002, the FDA still had no obligation to do so.  Similarly, before September 3, 2002, the FDA was under judicial direction to produce an adequate *Vaughn* index; after September 3, 2002, the FDA was under judicial direction to produce an adequate *Vaughn* index.  In short, the 2002 order preserved the *status quo* because it required the FDA to do something it was already required to do, namely, produce a suitable *Vaughn* index.  Mem. Op. (July 23, 2001) at 10 (demonstrating that the FDA's legal obligation to produce an adequate *Vaughn* index derived from an earlier court opinion).  Because the 2002 order preserved the *status quo*, it did not alter the legal relationship between the parties.  *See Davy*, 2006 WL 1889141, at *4; *see also OCAW* at 458; *Edmonds*, 414 F.3d at 1322.

### b. The 2002 Order Did Not Provide the Plaintiff Some Relief on the Merits of its Claims

Having concluded its analysis of the first *Davy* factor, the court now turns to analyze the second factor: whether the plaintiff "was awarded some relief on the merits of his claim." *Davy*, 2006 WL 1889141, at *4. When evaluating the second factor, the court considers whether the plaintiff obtained a court order on the precise relief it sought. *Id.* (stating that a plaintiff was awarded some judicial relief on the merits of its claims when it obtained the "precise relief his complaint sought – 'making the requested information promptly available'"); *Edmonds*, 417 F. 3d at 1320-21 (finding judicial relief where the plaintiff received a court order on the precise relief it sought – expedited processing).

Unlike the plaintiffs in *Davy* and *Edmonds* who obtained a court order on the precise relief they sought (prompt release of requested documents and expedited processing, respectively), the plaintiff here failed to obtain a court order on the precise relief it sought – immediate release of withheld documents. Pl.'s Mot. for Summ. J. (Jan. 15, 2002) (moving the court for an order requiring the defendant to "provide all records that have been withheld from plaintiff in this case"). The court declined to order the defendant to release the contested documents and instead put off ruling on whether the documents were properly withheld until the defendant revised its *Vaughn* index. Mem. Op. (Sept. 3, 2002) at 16. Indeed, requiring an agency to redo its *Vaughn* index is "not the stuff of which legal victories are made." *Buckhannon*, 532 U.S. at 604 (quoting *Hewitt v. Helms*, 482 U.S. 755, 760 (1987)).

Further, once the FDA submitted its revised *Vaughn* index, the defendant, not the plaintiff, prevailed on its motion for summary judgment. In granting the defendant's motion for summary judgment and denying the plaintiff's motion for summary judgment, the court held that

the FDA properly withheld all contested documents based on statutory FOIA exemptions. Mem. Op. (Sept. 24, 2004) at 22. As a result, the court refused to grant CRT's request for immediate release of exempt documents. *Id.* Unlike the plaintiffs who "substantially prevailed" because they sought and obtained a judgment on their claims for relief, the plaintiff here sought and failed to obtain a judgment on its claim for immediate release of withheld documents.

### 3. The Plaintiff is Not Eligible for Attorney's Fees Based on the Court's September 24, 2004 Order

The plaintiff also argues that it is eligible for attorney's fees based on the court's September 24, 2004 order, which required the FDA to release non-exempt documents related to the remaining eighteen INDs. Pl.'s Mot. at 12. The court's 2004 order, however, granted the defendant's motion for summary judgment and stated that the FDA lawfully withheld documents they claimed exempt. Mem. Op. (Sept. 24, 2004) at 22; Order (Sept. 24, 2004). The 2004 order further denied the plaintiff's motion for summary judgment, in turn refusing to grant CRT's request for release of documents which the FDA claimed were exempt. *Id.*

Despite the court's complete denial of the plaintiff's motion, the plaintiff argues that the final sentence of the court's 2004 memorandum opinion entitles it to relief. Pl.'s Mot. at 12. That sentence states "[b]ecause IND G was supposed to be representative of all the INDs, the FDA must now disclose all FDA generated records that pertain to the other 18 INDs that are similar in kind to the IND G records that the FDA has already released." Mem. Op. (Sept. 24, 2006) at 22. The plaintiff argues that this single sentence in the court's twenty-three page opinion denying the plaintiff's request for relief constitutes the necessary "judicial relief" to deem it a prevailing party. Pl.'s Mot. at 12. The defendant counters that the sentence refers to

11

documents the parties had previously agreed would be released following the court's ruling on their cross-summary judgment motions. Def.'s Opp'n. at 8-9.

The disputed sentence in the 2004 order does not make the plaintiff a prevailing party because the sentence does not resolve a contested issue between the parties. *OCAW*, 288 F.3d at 458 (holding that a stipulation and order dismissing the case did not constitute a judgment on the merits or meaningfully alter the legal relationship between the parties because the court did not decide any contested issues). When the court examined the revised sample *Vaughn* index in its 2004 memorandum opinion, the court ruled that all of the FDA's claimed exemptions were justified. Mem. Op. (Sept. 23, 2004) at 22. Using the time line the defendant proposed in its 2001 summary judgment motion, the court extrapolated from its ruling on the sample IND to the remaining eighteen INDs at issue. Mem. Op. (July 23, 2004) at 7. Because the court permitted the defendant to continue withholding contested documents related to the sample IND, the court also permitted the FDA to continue withholding similar documents related to the other eighteen INDs. *Id.*; *see also* Mem. Op. (Sept. 23, 2004) at 22. Likewise, because the defendant voluntarily released responsive, non-exempt documents related to the sample IND, the court's 2004 memorandum opinion signaled to the defendant that it should begin releasing uncontested, responsive documents related to the other eighteen INDs. *Id.*

The parties and the court had previously agreed that the FDA would wait until after the court's ruling on the cross-summary judgment motions before releasing non-exempt documents related to the other 18 INDs. Mem. Op. (Sept. 24, 2004) at 22 (noting that "it appears that the parties both understood that the disclosure was to occur after the court's ruling on the cross-motions for summary judgment"). The plaintiff's own statements reflect its understanding of the

agreement that "permitted FDA to produce a sample *Vaughn* index, and to have that index serve as the basis for a ruling that would cover *all* of the INDs subject to plaintiff's FOIA request." Pl.'s Mot. to Enforce Sept. 24, 2004 Order (emphasis in original). The defendant's summary judgment motion to the court, moreover, acknowledged its intent to "begin processing the remaining INDs" after the court ruled on the plaintiff's objections to the FDA's withholdings pertaining to IND G. Def.'s Opp'n. to Summ. J. (Feb. 5, 2004) at 3. Finally, and most telling, the plaintiff stated to the court, "[w]hile the FDA takes issue with CRT's position that the agency should be required to release all records 'immediately,' of course, plaintiff means as soon as possible after the court rules on the cross-motions for summary judgment." Pl.'s Reply Mem. in Support of Summ. J. (Feb. 19, 2004) at 2. Because the defendant had agreed in its 2001 summary judgment motion to release non-exempt, responsive documents related to all INDs after the court ruled on the dispositive motions, the court's final sentence did not resolve a contested issue between the parties. In sum, the court's 2004 order did not grant judicial relief to the plaintiff because it did not resolve a dispute between the parties. *OCAW*, 288 F.3d at 458.

Indeed, the final sentence in the court's 2004 opinion shows that the court adopted the defendant's proposed litigation time line for releasing all non-exempt documents after the court's ruling on the cross-motions for summary judgment, as opposed to the plaintiff's proposed time line for immediate release of all documents. Mem. Op. (July 23, 2001) at 8. When the court finally ruled on the parties' cross-motions for summary judgment, it merely signaled that the defendant had to begin processing release of the documents it had earlier agreed to release. Mem. Op. (Sept. 24, 2004) at 22. Further, when the plaintiff filed an "expedited" motion to enforce the court's 2004 order, which alleged that the defendant had not produced the disputed

records, the court denied the plaintiff's motion and instead ordered the parties to negotiate a satisfactory document production schedule.  Order (May 3, 2005) at 2.  The court's failure to enforce this final sentence provides the strongest evidence that the sentence lacks the necessary judicial *imprimatur* on which the plaintiff may proclaim judicial relief.

## IV.  CONCLUSION

For the reasons stated above, the court denies the plaintiff's motion for an award of attorney's fees.  An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this 5th day of September, 2006.

                                        RICARDO M. URBINA
                                        United States District Judge